Welcome to the Ninth Circuit. Judge Hamilton of the Fourth Circuit is sitting with us this week. We are glad that we could accommodate you with the televised argument. Although, as we told you, the U.S. attorney who just appeared, we are somewhat concerned about the policy of the state of Montana. The U.S. attorney not appearing at arguments. In any event, counsel, petitioner, please. Yes, thank you. My name is Jeremy Yellen and I represent Kim Smith. I'd like to reserve two minutes for rebuttal if I may. I believe that our arguments have been fairly specifically briefed. I attempted to file a 28-J letter this morning referring to the Blakely case that recently came down, as well as a case called U.S. v. Booker from the Seventh Circuit Court of Appeals, which was handed down this week. Because I think it applies very closely to the second argument that we've raised related to the enhancement of Ms. Smith's sentence from a level 12 to a level 20 based upon an aggravating factor specifically that Ms. Smith intended to obstruct the administration of justice. We argued that there was no evidence at the sentencing hearing to justify that finding by Judge Haddon. The standard that the court should have applied was very convincing at the time. We've argued in our brief by analogy that other cases where there are other charges that are similar but not the same require, have a specific element that require that the person act with the intent to obstruct the administration of justice. In this case, we argued that there was no element, there was no proof at trial, and there was no proof at the sentencing to support that. Whether you're right or not depends on whether retaliated. She was found to have retaliated against a witness by physical force or threat of physical force, right? That's correct by threat, Your Honor. The jury was instructed that they had to find knowingly threatened to cause bodily harm. Is that correct? Yes. Yes, it is, Judge, Justice Fletcher. However, the jury was not instructed on anything related to affecting the administration of justice, obstructing the administration of justice, which, of course, is not the case. On that defense and whether you think that retaliating against a witness is automatically an obstruction, something done with an intent to obstruct justice or not. In other words, it seems to be a burden to demonstrate there's some difference of consequence, which would require an additional fact finding in order to find an intent to obstruct justice beyond an intent to retaliate against a witness. Right? Yes. All right. So what's the difference between intending to retaliate against a witness and intending to obstruct justice? Well, retaliation against a witness can be because you're upset. As in this case, the allegation was that a family member was witnessed against my client's daughter, son, excuse me, and my client went to the witness's parents' house and was allegedly upset and made some threatening comments. There's been no evidence presented at any stage of this case on any level of proof that is looked at that she intended to obstruct the administration of justice. And simply because somebody gets mad at somebody doesn't mean they get this eight-level enhancement, which results from a sentence of 10 to 16 months to tripling the sentence to 33 to 41 months. And, of course, with Blakely and Booker now discussing it. Retaliate certainly includes some sense of punishing somebody for having done something, i.e., in this case, being a witness. Right? That's what retaliate means. Doesn't retaliate mean I'm doing this to you because of what you did in this instance being a witness? So the question is whether that is sufficient to show an intent to obstruct justice because obviously if witnesses are going to get beat up, they're unlikely to cooperate with the justices. Well, the interesting feature in this case, Justice, is that these people who were threatened, allegedly, these people who were threatened were the parents of the actual witness. So we have that added dimension. In addition to there being no lack of this intention to obstruct justice, we have the actual threatened party being somebody or some people, because there were two, other than the actual witness. So basically what Judge Haddon did was he found that because my reading of the court's transcript and the sentencing and hearing of it is that simply because she retaliated, that is sufficient to constitute an order to obstruct administration of justice. But also, in addition to that, in order to justify this eight-point jump, they also have to show that this is one of the more serious forms of retaliating against a witness or obstruction of justice, intention to obstruct justice, which we also argued there was no evidence of that. There were threats. There was no actual contact. These people were family members. They were next-door neighbors. They had known each other for years. So we stringently argued that that's not applicable, especially in light of Blakely and Booker. Well, Blakely and Booker would only be relevant if your going-in premise was correct, that is that there's a difference between retaliation and an intent to obstruct justice. So if there's no difference, then the fact was found by the jury and there's no Blakely problem. Yeah, but in my search, I couldn't find anything that one would be tantamount to the other. If one was tantamount to the other, there would not be this extra requirement that the government prove, even at a sentencing hearing, to justify this eight-level increase. So I think that it's clearly an extra element, clearly wasn't proved to any level at any stage, certainly wasn't proved at trial. And we're not even clear, based upon the record, if the court even, if this panel or the Ninth Circuit viewed, if the Ninth Circuit viewed that Blakely doesn't apply, we're not certain that the district court applied the proper standard of proof, which is clear and convincing as opposed to a preponderance of the evidence because of the level jump. So we argue either way there isn't enough to justify this eight-point leap. If I can turn to the first argument relative to jurisdiction, this is a very complicated issue in my mind to sort it out, and I try to be clear in the brief. But the crux of my argument is based upon the Begay case that was cited in both briefs, Mr. Faggert as well as myself, where we believe that, we believe the facts of this case and the charge in this case relate to federal enclave law, in which the sightest defense is an element of the crime, which we believe is the case here, and because the underlying offense of burglary does not have nationwide applicability, the district court did not have jurisdiction over Ms. Smith's case. So I'd like to reserve the rest of my time, if I may, unless the panel has further questions. That's fine. Thank you. We'll reserve the rest of your time. Thank you. Thank you. I'll turn the TV around so I can see. There's no one else to see it. So for some reason we can't do that. See, mine's not in color and it's very hard to see. I don't know why. Mine's different. I think mine's broken. Mine doesn't have the color that Judge Fletcher's has and Judge Hamilton's has. I don't know why. I'm sorry. Thank you. Thank you very much. Mr. Thagard. Good morning. My name is Joe Thagard, and I'm the AUSA who handled this case. And on behalf of the government, I do thank the court for allowing us to appear by videoconference this morning. With respect to Mr. Yallin's first issue, which concerns the eight-level enhancement, it's the government's position that Blakely does not apply to the sentencing guidelines. And I recognize that the Seventh Circuit has held elsewhere otherwise. Suppose that it does. Would it make any difference here? I don't believe it does. And it's the government's position that even if Blakely were to apply in this instance, that the finding that was required by the jury in the jury instructions, that they had to find that this was an act of retaliation, amounts in and of itself to obstruction of justice. When witnesses are threatened, and when witnesses, the families of witnesses are threatened, it's the government's position that that is, in and of itself, obstruction of justice. It's the government's position that there is no other way to view that. Retaliation is simply that. It undermines the criminal justice system. It undermines the willingness of witnesses to assist government. And when a person is mis- Isn't the question whether an intent to obstruct justice is a future-looking intent, whereas retaliation is a back-looking intent, that would not be an odd way to read the provisions, would it? I mean, usually you say you have an intent to obstruct justice. You don't mean yesterday. You mean tomorrow. I agree. And I agree that it is a future-looking act. But I also, Judge, believe that it is so inexplicably intertwined with the retaliation that when a person goes out and threatens to harm someone, they are retaliating. But there is also, at the very least, implicit within that, an intent to prevent that person from further cooperating with the authorities. And it's the government's position that that's what happened in this case. And it's reasonable in reading the district court's findings and finding that the enhancement was appropriate here. The district court said they didn't know that retaliation against a witness was one of the offenses cross-referenced by the enhancement here. And so I think that while there may be some distinction that retaliation can be backward-looking, that it certainly was also forward-looking. And it is, in fact, obstruction of justice. And I would also address the issue of the severity of the conduct here. It is true, Judge, that the defendant was related to the victims, and they had homes next to each other. That is not necessarily unusual in a rural area of Montana. We all know each other. It's just simply a fact of life out here. But what I do think is important here, and goes to the severity of the conduct, is the fact that the defendant came into the victim's home uninvited. She was not invited in there. She essentially walked in there and began issuing threats to kill the victim's daughter, who was the witness in this case, to kill the parents themselves, the parents of the witness, and kill their uncle, who was an older individual. Those sort of threats, fortunately, were not carried out. It does not, however, diminish the seriousness of those. Those sort of threats undermine justice. One strange sort of fact here, though, is that the only gun was the victim's. Is that right? The victim pulled out a gun. It is true. It is true. And I suppose that may be another fact of living in Montana. And I don't wish to make light of it, but people are armed, and they do use firearms to protect themselves. And that certainly escalated this circumstance, but I also think it's a testament to how seriously the victims took the threats that were issued against them. They were scared enough that they felt obliged to drive the defendant and her husband out of the residence at the port of the gun. And so it's the government's position that it's not only a threat that was issued here, but that it's very serious and it was appropriate to give a level of enhancement. Finally, I would just briefly tell you. Excuse my interruption, but given the reasoning that the district court explained in exercising his discretion, do you think that he was correct when he found that the offense was committed with significant planning and it was of more than a limited duration and that it didn't represent a marked deviation by the defendant from otherwise law-abiding life? Does the record support that? I do, Your Honor. I do, Your Honor. And the reason, and Judge Hatton, I think, made some fairly extensive findings in this regard. And one of the things that occurred was the defendant normally or typically resided in Arizona and had known for some time that Carrie LaPlante, the witness in this case, had given this evidence against the defendant's son. And so she had certainly had time to reflect between traveling from Arizona to Montana about what to do. I mean, this was not necessarily an instance where she learned at one moment that the LaPlante child had given this evidence and then just a moment later turned around and issued these threats. There was a significant lapse of time. Didn't she come to the reservation every summer? She did come to the reservation every summer, but it appeared that there was some period of time, certainly more than a day of lapse, between the time that she learned who had provided this information and when she made the threats. Basically what had happened was she had learned sometime earlier that her son was under indictment for the burglary and then at some point had apparently spoken with her son's defense attorney. And it was after that conversation, at some point, again, sometime in the lapse of time, that she went into the LaPlante's home and made this threat. So there was a lapse of time, and I think that it allowed for the court to find that there was significant premeditation. I will concede that this woman has led, from whatever we can see here, a pretty law-abiding life, and that this was a different action that she was inconsistent with her normal way of life. However, whether it raises the level of being aberrant behavior or not is another matter, and the district court found otherwise, and I think on the record before that was not an abuse at its discretion. But you do agree that that's reviewable? I do agree that it's reviewable, yes. And my final issue would simply be to address the issue of the subject matter jurisdiction. It's simply the government's position that this crime charged against the defendant was a crime of general applicability. It was not tied to the status of the crime, and that the court had jurisdiction. Unless the panel has other questions for me, I'll resume my seat. That's fine. Can I ask a question? Are you able to see us clearly and hear us? I can't see terribly clearly, Judge. There's sort of a split screen. We can see each one of you, and you're in the black and white. And vice versa. I've had a lot of difficulty with being able to see you. You're sort of going in and out of focus, which is only pertinent to the question of whether we are comfortable with these kinds of arguments. My conclusion is this argument is not very much. I will pass that along to my superior. Thank you. Thank you. Thank you. Thank you. I'm not sure how much time I have left. You have about two minutes. Two minutes and two seconds. Okay. Thank you very much. With regard to this aberrant behavior, there's only speculation and conjecture as to whether there was significant planning. As Justice Hamilton pointed out, Kim Smith was from Brown. She was educated, by and large, in that area. She had family there. She had a sick mother there. She had a property right next door. There was no planning. It's pure speculation. The government didn't even, I don't believe they argued planning to any great degree at the sentencing hearing. And with regard to limited duration, there's the same notion. The parts of the transcripts I cited said this was a very limited duration, and clearly this was Kim Smith's only brush with the law, and we've gone into great detail to explain that. And as Judge Haddon remarked, this was highly unusual. She had the most letters of support of anybody he's been in front of, and that just goes to the aberrant conduct that occurred this day with Ms. Smith. But back to the issue of the intent to obstruct the administration of justice, Kim Smith had no way to defend that aspect at the trial because there was no element. There was no specific element to that. There was no way to defend that. Excuse me. Didn't she have to intend to retaliate? Intent to retaliate, but there was nothing that she knew she had to defend and say, hey, I may have lost my temper, but I certainly didn't intend to stop somebody from testifying. And specifically, whether this retaliation has the ultimate result of undermining, it has to be the intent to obstruct the administration of justice. And on that intent element, we argue that there was no proof of any kind other than the fact that if you retaliate against a witness, which wasn't the case here, but if you retaliate against a witness, the necessary corollary to that is you must have intended to obstruct the administration of justice. You could have just lost your cool. You could have just gotten mad because they were a family member and they really hurt your feelings. It had to be because you wanted to stop the wheels of justice, which they have to prove. They didn't, and we believe that because of that, and because Kim Smith did not have the opportunity to even try to defend that at trial with the requisite proof and the requisite other constitutional protections, she can't be held to that standard at this point. So we believe that she, frankly, if her argument is viewed persuasive, she should be out because she's been in for 13 months already, and we're hopeful that because of the law as it is now in the facts of this case, that the court will at the very least find that she should be released and at best find that the government had no jurisdiction based upon the specific facts of this particular case, namely retaliating against a witness where the underlying offense was burglary, which is necessarily an offense that is solely there because of the site of the crime and because of everybody being Native Americans essentially. Although your time is up, counsel, I just wanted to clarify one point. The trial of the son had not taken place at the time of this incident, is that correct? That is very true. Thank you very much, and thank counsel. The case of the United States v. Smith is submitted, and we are in recess. Thank you. Thank you. Thank you. This is Dennis DeLong with the Ninth Circuit Court as far as technical support is concerned. Could I keep you there for just a moment? Court is officially stopped. This is just in regard to technical aspects. Judges have left the courtroom. Are you able to hear me? She's ended. Okay. Okay. Thank you.
judges: B. Fletcher, Hamilton , Berzon